Filed 7/31/24  Miller v. San Luis Bay Estate Homeowners Assn. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JANE STRODE MILLER,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAN LUIS BAY ESTATE HOMEOWNERS ASSOCIATION, INC.,<br><br>    Defendant and Appellant. | 2d Civ. No. B328181<br>(Super. Ct. No. 22CV-0376)<br>(San Luis Obispo County) |

A homeowner's association governing a planned development appeals the grant of a temporary restraining order preventing the association from interfering with a landowner's use of a private road through the development.  The landowner has established a high probability of ultimately prevailing.  We affirm.

## FACTS

The entire development (Development), of which Jane Strode Miller's 18-acre parcel is part, consists of 1,100 acres in

San Luis Obispo County (County). A public road runs along the east side of the Development. Access to the Development from the public road is by two gates, one at the northern end of the Development and the other at the southern end. A private road forms a large single loop through the Development, beginning at one gate and ending at the other.

Miller's parcel is at the northwest corner of the Development. The private road runs along the eastern boundary of Miller's parcel for some distance. The San Luis Bay Estates Homeowners Association, Inc. (Association) controls the private road.

A master plan for the Development was approved by the County in 1981. The plan contemplated phased development and annexation of the developed areas by what is now the Association. Miller's parcel is undeveloped and has not been annexed.

*Development's Governing Document*

The Development is governed by a declaration of Covenants, Conditions, Restrictions, and Reservation of Easements (CC&R's). The CC&R's contain provisions relating to the use of the private road for both annexed and unannexed parcels.

Use of the private road for annexed parcels is governed by section 2.2(C) of the CC&R's. That section is headed "Effect of Annexation" and provides in part: "Owners of . . . Lots in the newly annexed Increment . . . will have interests in the Phase Common Area of their Increment or Phase, and, together with Owners of newly annexed Additional Parcels, will have nonexclusive easements over the Phase Common Area of Phase A of Increment 1 and previously annexed Increments or Phases

2

thereof and over previously annexed Additional Parcels, if any, for ingress and egress and for use of pedestrian and horse trails, bikeways and roads maintained or to be maintained by the [Association], pursuant to the grant of the easements described in Exhibit "D" hereto and in the Declaration of Annexation for any previously annexed Increments, Phases or Additional Parcels."

Use of the private road for unannexed parcels is governed by section 4.12. That section is headed "Special Provision for Assessment of Non-Annexed Portions of Property," and provides in part: "In the event that [parcels in the Development], are not annexed to this Declaration, pursuant to Section 2.2, and those Phases, Increments, Additional Parcels, or portions of the Property are developed, and *sold or leased to persons whose use and occupancy thereof results in use of the private streets*, pedestrian and horse trails, bikeways, and other improvements maintained by the [Association] as part of the Master Common Area, Declarant hereby covenants for itself and its successors and assigns that such property and the owners thereof shall be subject to Annual and Special Assessments pursuant to section 4.1 levied by the Board for the costs of maintenance, repair, insurance, administration and policing of the Master Common Area. The cost of maintenance and repair under such circumstances shall be prorated equitably between the properties and payment [therefore] shall be enforced pursuant to Section 4.10." (Italics added.)

*Tract Maps*

In 1981 San Luis Bay Estates, Inc. (SLBE) owned the entire property that would become the Development. That year SLBE obtained approval from the County for a master development plan that contemplated subdivision of the property

into various areas for development.  A map submitted to the County in support of the approval shows the private road.  On the map under the heading of existing improvements is the notion that the road is graded and chip sealed.

By 1987 the Development was owned by the San Luis Bay Limited Partnership (Partnership).  The Partnership recorded the CC&R's containing sections 2.2(C) and 4.12 granting the right to use the private road to the owners of both annexed parcels and unannexed parcels.

Thereafter a series of tract maps were recorded in the County's official records subdividing lots in the Development. Each tract map shows a portion of the private road.  Placed together, the maps show the entire road.  All the maps were recorded within Miller's chain of title prior to her purchase of the parcel.

*Prior Use of Private Road*

Miller purchased her parcel from Robin L. Rossi in 2021. Before purchasing, she inspected the parcel multiple times, driving over the private road.  After purchasing, Miller submitted an application to the Association for a permanent pass through the gates along with a check for the pass fee.  The Association denied her application, and she has at all times since been denied access to the private road.  She has no other legal access to the property.  Miller is in the process of obtaining a use permit from the County to build a single-family residence on her parcel.

Rossi has extensive historic knowledge of the entire Development due to his direct ownership of various parcels; his former ownership of Miller's parcel; 33 years as a director on the board of the water company that is the sole source of water and sewer service for the Development; and as a design professional

4

working on various portions of the Development. Rossi presented aerial photographs dated 1969 that show the private road in substantially the same location as it is today. The photographs show the road was graded by 1969. The photographs confirm Rossi's own recollection.

Rossi obtained what became Miller's parcel in February 2001. Rossi, his employees, and guests have been routinely provided passes and other means of access to his properties over the private road, including the parcel he sold to Miller. Until recently all owners of property within the Development have been allowed access over the private road. The private road is the only legal access to Miller's parcel.

In May 1998, the Association sent a letter to Rossi stating that it does not question his right as a property owner within the Development to unrestricted access through the gates. In June 2019, in separate litigation involving the Association, the Association responded to interrogatories as follows:

"Explain why Robin L. Rossi is the only Plaintiff in this action who has been allowed to access SLBE since January 1, 2019.

"[Response]: Robin L. Rossi owns property in the Estates.

"Explain why Steve Rossi has been allowed to access SLBE since January 1, 2019.

"[Response]: Two undeveloped parcels in the Estates are owned by the Rossi Trust and Responding Party assumes that Steve Rossi, as Robin L. Rossi's son, is covered." (Original numbering omitted.)

*Procedure*

Miller brought an action against the Association alleging causes of action for: quiet title to express easement, implied

5

easement, easement by reference to a map, equitable easement, easement by necessity, declaratory relief, and preliminary and permanent injunctions.

Miller made the instant motion for a preliminary injunction to require the Association to grant her a gate pass to gain access to her property over the private road. The trial court granted the preliminary injunction. The court found that without the injunction Miller has no legal right of access to her property; that Miller's proposed construction and maintenance of a single-family residence on her property presents a de mimimus increase in road costs for the Association; and that Miller will prevail on the merits.

## DISCUSSION

### I. Preliminary Injunction

To obtain a preliminary injunction, the plaintiff must show it is likely that she will prevail on the merits and the relative balance of harms that is likely to result favors granting the injunction. (See *White v. Davis* (2003) 30 Cal.4th 528, 554.) The greater the likelihood plaintiff will prevail, the less plaintiff must show that the balance of potential harms favors granting the preliminary injunction. (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.)

### II. Probability of Prevailing

#### (a) CC&R's

The Association relies on section 2.2(C) of the CC&R's, granting easements for ingress and egress over the common areas to the owners of annexed parcels. The Association claims that under the CC&R's only the annexed parcels have such easements, and Miller's parcel is not annexed.

But section 2.2(C) of the CC&R's does not say that only annexed parcels have such easements. In fact, section 4.12 of the CC&R's expressly provides for use of the private roads over the common area for owners of non-annexed parcels. The Association does not even mention section 4.12 in its briefs on appeal, no less attempt to refute its plain meaning.

Rossi was assured by the Association as far back as 1989 that as a property owner within the Development he had the unrestricted right to use the private road. The Association confirmed as much under oath in answers to interrogatories in 2019. It is far too late for the Association to now claim that Miller as Rossi's successor in interest has no such right.

*(b) Civil Code Section 4505, Subdivision (b)*

Civil Code section 4505 provides in part: "Unless the declaration otherwise provides . . . (b) [I]n a planned development with common area owned by the association, there is an easement for ingress, egress, and support, if necessary, appurtenant to each separate interest. The common area is subject to these easements."

The Association claims the CC&R's "otherwise provides" and points to section 2.2 of the CC&R's. That provision affirmatively gives the owners of annexed parcels an easement for ingress and egress. But nothing in section 2.2 of the CC&R's provides that the owners of unannexed parcels have no such easement. Civil Code section 4505, subdivision (b) states a legislative policy in favor of easements for ingress and egress in planned developments. We must construe the CC&R's in a light favorable to that policy. Section 2.2 of the CC&R's does not otherwise provide.

Moreover, the Association ignores section 4.12 of the CC&R's. That section gives the owners of unannexed parcels a right of way for access to their parcels. Read together, sections 2.2 and 4.12 affirm the policy stated in Civil Code section 4505, subdivision (b).

*(c) Tract Maps*

When a lot is sold with reference to a tract map showing lots and streets, the purchaser of the lot has private easements in the streets for ingress and egress and for any other use proper to a private way. (*Danielson v. Sykes* (1910) 157 Cal. 686, 689.)

Miller offered recorded maps, documents, and the affidavit of her attorney tracing the creation of Miller's easement in the private road. The Association claims, without citation to authority, that an attorney is not qualified to give an opinion on the state of Miller's legal title. Instead, the Association claims that an expert, such as a licensed surveyor, is necessary to guide the trial court. The court, in the Association's view, is incapable of interpreting legal documents on its own. The Association offered a declaration by a licensed surveyor containing conclusory statements derived from his interpretation of the title documents. The surveyor concluded that Miller did not have the easement she claimed.

In fact, attorneys frequently give opinions on the state of legal titles. It involves nothing more than the interpretation of legal documents, something attorneys are trained and qualified to do. Similarly, the trial court is equally qualified. It is the Association's licensed surveyor who is out of his lane. He is not an attorney. He can do no more than give a layman's opinion as to the legal effect of documents. The Association's reliance on *Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729 is misplaced.

8

The question there was the proper survey method for establishing a boundary line, a question clearly within a surveyor's expertise. It did not involve a legal opinion on whether title documents created an easement.

The Association argues that the grant deed to Miller contains no reference to an easement. But the easement existed prior to Miller's grant deed. There is no need to include existing easements in a grant deed. "A transfer of real property passes all easements attached thereto . . . ." (Civ. Code, § 1104.)

### III. Balance of Harms

Both Rossi and Miller declared that the private road is the only legal means of access to Miller's parcel. The trial court so found.

In an attempt to challenge the trial court's finding, the Association includes in its opening brief, maps taken from Google Maps. The Association cites no place in the record where the maps were entered into evidence in the trial court. The only citations are in footnotes referencing the websites where the maps can be found. Nor does the Association make a motion with supporting authority requesting that we take judicial notice of the maps. The maps are simply presented in the opening brief as if they were part of the record. The effort is not only duplicitous, but also unconvincing. It is a tacit admission that the evidence in the trial court was insufficient to support the Association's position.

Even had the Association requested that we take judicial notice of the maps, we would decline. The Association provides no explanation why the maps were not offered into evidence in the trial court, the maps are not authenticated as to their

accuracy, and the maps do not show whether the alleged access is legal.

Similarly, the Association claims that a map on page nine of the respondent's brief shows Miller has legal access by the road leading to the south of her parcel. But the map does not show whether the road provides legal access. The place to challenge Miller's claim that the private road is the only legal access to her parcel is in the trial court, not on appeal.

More importantly, Miller has shown she is likely to prevail based on theories that do not require a showing that the parcel would otherwise be landlocked. The question of harm to the defendant must be measured against the plaintiff's likelihood of prevailing. (*Butt v. State of California, supra*, 4 Cal.4th at p. 678.) Here Miller presents a very high likelihood that she will prevail in establishing an easement over the private road even if she has an alternative access to her parcel. There is no basis for overturning the trial court's order granting Miller temporary use of the private road when she has shown such a high likelihood of obtaining permanent use.

## DISPOSITION

The judgment (order) is affirmed. Costs on appeal are awarded to respondent.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.                    BALTODANO, J.


10

Rita Coyne Federman, Judge

Superior Court County of San Luis Obispo

_____

Freeman Mathis & Gary, David Molinari, Matthew S. Jones, Christian E. Foy Nagy for Defendant and Appellant.

Diehl & Rodewald, Joseph W. Diehl, Jr. and Sean N. Nagel for Plaintiff and Respondent.